UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE MONTEROSO AGUSTIN,

                    Petitioner,

       v.

FERETI SEMAIA, et al.,

                 Respondents.

Case No. 5:25-cv-02788-SRM-JDE

**ORDER GRANTING IN PART PETITIONER'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR EXPEDITED HABEAS BRIEFING SCHEDULE [3]**

On October 21, 2025, Petitioner José Monteroso Agustín, a noncitizen, filed a Petition for Writ of Habeas Corpus, Dkt. 1 ("Pet."), followed by a First *Ex Parte* Application for Temporary Restraining Order ("*Ex Parte* Application"), Dkt. 3 ("App."). On October 22, 2025, Respondents (the "Government") filed an Opposition to the *Ex Parte* Application ("Opposition"). Dkt. 6 ("Opp'n"). On October 27, 2025, Petitioner filed a Reply. Dkt. 9 ("Reply"). The core allegation of the Petition is that Petitioner was wrongly subjected to mandatory detention under 8 U.S.C. Section 1225(b)(2)(A), which applies to noncitizens seeking admission into the country, when he should have been granted an individualized bond hearing under 8 U.S.C. Section 1226(a), which applies to noncitizens already in the country pending the outcome of removal proceedings. Pet. at 9.

1

Before the Court is Petitioner's *Ex Parte* Application, wherein Petitioner seeks an order (1) enjoining the Government from continuing to detain him; (2) ordering his immediate release from immigration detention; and (3) enjoining the Government from re-arresting him until he is afforded a hearing before a neutral decisionmaker. App. at 2. For the following reasons, the Court **GRANTS IN PART** the *Ex Parte* Application.

## I.    Background

### A.    Factual Background

As alleged, Petitioner José Monteroso Agustín is a 56-year-old husband, father, and church minister.[1] Pet. at 2. Petitioner was born in 1979, in San Agustín Acasaguastlán, El Progreso, Guatemala. *Id.* at 3. Petitioner was abandoned by his parents when he was eight years old and grew up without family support or formal education. *Id.* Faced with the violence and pressure to join gangs, Petitioner fled Guatemala and first entered the United States in November 2001 without inspection. *Id.* Petitioner and his wife, a naturalized citizen of the United States, have a son, who is a United States citizen. *Id.* at 3-4. Petitioner has worked as a gardener, landscaper, and minister at the Manantial de Vida Christian Church. *Id.* at 4. In 2009, Petitioner was charged with a DUI offense and was removed from the United States. *Id.* Petitioner re-entered the United States in 2019. *Id.*

On June 16, 2025, while driving home from a landscaping job, Petitioner was stopped by Immigration and Custom Enforcement ("ICE") officers, taken into custody, and has since remained detained at the Adelanto ICE Processing Center. *Id.* at 4-5. On July 17, 2025, the Department of Homeland Security ("DHS") formally initiated removal proceedings by serving Petitioner with a Notice to Appear and charging him under the Immigration Naturalization Act ("INA"), Section 212(a)(6)(A)(i), 8 U.S.C. § 1182, as an

---

[1] The Court notes that the Petition states Petitioner's age as 56 and that he was born in 1979. *See* Pet. at 2-3.

individual present without admission or parole. *Id.* at 5; *see* Dkt. 1-3, Ex. C. Through counsel, Petitioner conceded removability and declined to designate a country of removal. Pet. at 5. He also notified the immigration court of his intent to seek asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). *Id.*

On September 11, 2025, Mr. Agustín filed a Form I-589 application for asylum, withholding, and CAT relief. *Id.*; *see* Dkt. 1-4, Ex. D. In that application, he explained how gang members in Guatemala had targeted him for recruitment and threatened him with serious harm for refusing to participate in their criminal activity. Pet. at 5. Because his application was filed more than one year after his most recent entry, he also submitted a brief explaining the excuse for delay, including his limited education and literacy, and his long-standing lack of access to legal counsel. *Id.*

**B.    Procedural Background**

While pursuing this relief, Petitioner sought release from detention. Pet. at 5. On September 16, 2025, an immigration judge, citing the recent decision issued by the Board of Immigration Appeal ("BIA") in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), found that Petitioner was subject to mandatory detention and therefore ineligible for release. *Id.*; *see* Dkt. 1-5, Ex. E. Counsel reserved appeal of that decision, with a deadline of October 16, 2025. Pet. at 5.[2] On October 21, 2025, Petitioner filed a Petition for Writ of Habeas Corpus, bringing claims for (1) unlawful detention under the INA and

---

[2] It is unclear whether Petitioner timely filed his appeal before the BIA. However, because the Court finds that it has jurisdiction to hear the habeas petition, whether Petitioner timely appealed his bond denial to the BIA is immaterial to the temporary restraining order. *See Mosqueda v. Noem*, No. 25-cv-02304, 2025 WL 2591530, at *7 (C.D. Cal. Sep. 8, 2025) ("[T]he Court is not convinced that administrative review would allow BIA to correct its own mistakes and to preclude the need for judicial review. The Court finds that the statutory interpretation question at the center of this case must be resolved by a judicial decision on the merits.").

Administrative Procedure Act ("APA"); (2) violation of the Fifth Amendment's Due Process Clause; (3) and violation of the APA for misclassifying Petitioner under the incorrect statute. *Id.* at 14-20. That same day, Petitioner filed the *Ex Parte* Application, wherein Petitioner seeks an order (1) enjoining the Government from continuing to detain him, (2) ordering his immediate release from immigration detention, and (3) enjoining the Government from re-arresting him until he is afforded a hearing before a neutral decisionmaker. App. at 2.

On October 22, 2025, the Government filed an Opposition to the *Ex Parte* Application. *See* Opp'n. The Government asserts that the Court lacks jurisdiction to hear this action because 8 U.S.C. Sections 1252(g) and (b)(9) preclude review of Petitioner's claims. *Id.* at 11-15. The Government also asserts that Petitioner fails to meet the high bar for injunctive relief. *Id.* at 6. Specifically, the Government contends that Petitioner fails to demonstrate a likelihood of success on the merits because under Section 1225(b), Petitioner must be detained pending the outcome of his removal proceedings. *Id.* at 15-19. The Government also asserts that the balance of hardships is in its favor because the government has a compelling interest in the stead enforcement of its immigration laws, and judicial intervention would disrupt the status quo. *Id.* at 19-20. The same day the Government filed its Opposition, the Court issued an Order enjoining respondents from relocating Petitioner outside of the Central District of California. Dkt. 7. On October 27, 2025, Petitioner filed his Reply. *See* Reply.

## II.    Jurisdiction

District courts may issue a writ of habeas corpus to any person within the district who is "in custody in violation of the Constitution." *See* 28 U.S.C. § 2241(a), (c). The Government asserts that 8 U.S.C. Sections 1252(b)(9) and 1252(g) of the INA strip the Court of jurisdiction to decide this case. Opp'n at 11.

First, the Government asserts that Section 1252(g) deprives the district courts of jurisdiction to review Petitioner's habeas petition because it "stems from their detention

during removal proceedings." *Id.* Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." *See* 8 U.S.C. § 1252(g). However, the Ninth Circuit has rejected the proposition that Section 1252(g) bars habeas challenges to immigration detention. *See Bello-Reyes v. Gaynor*, 985 F.3d 696, 700 n.4 (9th Cir. 2021) ("[T]o the extent that the government argues that we lack jurisdiction over [petitioner's habeas] claim under 8 U.S.C. § 1252(g), this argument fails[.]"). The Supreme Court has interpreted Section 1252(g) narrowly, limiting it to "three discrete actions" that the Attorney General may take: her "'decision or action' to 'commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)). "It is implausible that the mention of [these] three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

Interpreting Section 1252(g) narrowly, the Petition does not seek an order from this Court to commence proceedings, adjudicate his case, or to execute any removal order. *See generally* Pet. Like other detainees in ICE facilities who have filed habeas petitions after being denied a bond hearing, "Petitioner's claim challenges the Government's failure to follow Due Process during [his] re-detention." *See Rodriguez v. Kaiser*, No. 1:25-cv-01111-KES-SAB (HC), 2025 WL 2855193, at *5 (E.D. Cal. Oct. 8, 2025) (citation modified). "Such a claim falls outside 'section 1252(g)'s narrow jurisdictional bar and present[s] constitutional and procedural due process challenges rather than direct challenges to removal execution.'" *Id.* (quoting *Phetsadakone v. Scott*, No. 2:25-cv-01678-JNW, 2025 WL 2579569, at *2 (W.D. Wash. Sep. 5, 2025)).

Second, the Government, relying on *J.E.F.M. v. Lynch*, asserts that Sections 1252(a)(5) and (b)(9) provide that "*any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review]

process." Opp'n at 13 (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). The Government more specifically alleges that Section 1252(b)(9) provides that judicial review of all questions of law "is only proper before the appropriate federal court of appeals in the form of a petition for review of a final removal order." *Id.* at 12 (citing § 1252(b)(9)). However, the Ninth Circuit recently re-affirmed that courts "have jurisdiction to decide a 'purely legal question' that 'does not challenge the Attorney General's discretionary authority . . . even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority.'" *See Ibarra-Perez v. United States*, No. 24-631, —— F. 4th ——, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004)) ("Section 1252(a)(5) does not apply because [petitioner] does not seek review of his removal order."); *see also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 4 (2020) ("[Section 1252(b)(9)] does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." (citation modified)).

Petitioner raises a discrete, "purely legal question" about the legality of the detention statute applied to him—namely, whether his mandatory detention under Section 1225(b)(2) violates the Fifth Amendment's Due Process Clause because Section 1226(a) should have been applied instead. Pet. at 9. In its Opposition, the Government mainly focuses on the scope of the jurisdictional bar implied by claims "arising from" the commencement of removal proceedings. *See* Opp'n at 8, 11-13.

The Supreme Court has cautioned against an "expansive" interpretation of Section 1252(b)(9) with "uncritical literalism" which would lead to "absurd" results and make certain claims "effectively unreviewable." *See Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). This aligns with other courts in this Circuit in similar contexts that have determined that Section 1252(b)(9) does not present a bar where a petitioner is

challenging detention without a bond hearing. *See, e.g.*, *Rodriguez*, 2025 WL 2855193, at *4; *Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530, at *3 (C.D. Cal. Sep. 8, 2025) (concluding that "section 1252(g) does not present a jurisdictional bar to judicial review" (citing *Jennings*, 583 U.S. at 294)); *Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *3 (S.D. Cal. Sep. 3, 2025) (holding that a challenge to detention without a bond hearing pursuant to 8 U.S.C. § 1226(a) was not barred by § 1252(b)(9)); *Ceja Gonzalez v. Noem*, No. 5:25-cv-02054-ODW-BFM (C.D. Cal. Aug. 13, 2025) (Dkt. 12) (rejecting government's argument that § 1225(b) governs over the general authority at § 1226 and determining that § 1252(b)(9) was not a jurisdictional bar as petitioner's claims did not "arise from" removal proceedings).

Here, Petitioner is not challenging the Attorney General's discretionary authority to commence, adjudicate, or execute removal proceedings. Instead, Petitioner's contention is regarding detention without a bond hearing. Accordingly, Petitioner's claims do not "arise from" removal proceedings. Thus, Sections 1252(b)(9) and (g) do not present a jurisdictional bar to the Court reviewing Petitioner's claims. Nor does Section 1252(a)(5) apply as Petitioner is not seeking review of a removal order. The Court, therefore, concludes Petitioner's claims are properly before it, and turns to whether a temporary restraining order ("TRO") should issue.

## III.    Legal Standards

"Ex parte applications are permitted solely for extraordinary relief." *Thomas v. Thomas Wylde, LLC*, No. 2:17-cv-04158-JAK-PJW, 2017 WL 8236279, at *1 (C.D. Cal. June 7, 2017). To justify such relief, an applicant must present evidence showing that it "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *See Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D.

7

Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve a "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *See Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *See Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021). Mainly, this standard ensures that the four Winter elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132 (internal quotation marks omitted).

## IV.    Discussion

Petitioner brings three claims: (1) unlawful detention under the INA and APA, (2) a Due Process claim under the Fifth Amendment, and (3) violation of the APA due to his misclassification under Section 1225. Pet. at 14-20. The core allegation is that Petitioner was wrongly subjected to mandatory detention under 8 U.S.C. Section 1225(b)(2)(A), when he should have been granted an individualized bond hearing under 8 U.S.C. Section 1226(a). Pet. at 9. As a result, Petitioner seeks immediate release and to enjoin the Government from re-arresting him until he is afforded a bond hearing. App at 16.

**A.**  **Whether Petitioner is Likely to Succeed on the Merits**

Petitioner asserts his detention is governed by Section 1226(a) because he is a long-time resident, and he was unlawfully subjected to mandatory detention under Section 1225(b)(2). App. at 7-9. In its Opposition, the Government asserts that Petitioner falls under the category of "applicants for admission" under Section 1225(a)(1) and is therefore subject to mandatory detention pending the outcome of his removal proceedings. Opp. at 15-19.

A recent decision in this Circuit sheds light on the Government's altered approach or application of Section 1225 to detention and the matter now before the Court:

> Pursuant to a new ICE "Interim Guidance Regarding Detention Authority for Applications for Admission" ("New Policy"), "all noncitizens who entered the United States without inspection shall now be deemed 'applicants for admission' and subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)." Prior to the New Policy, foreign nationals "present without admission" were not considered detained under 8 U.S.C. § 1225. Instead, they were considered detained under 8 U.S.C. § 1226(a) and received bond hearings. Section 1226(a) of the Immigration and Nationality Act ("INA") allows for release on bond or conditional parole, but § 1225(b)(2)(A) does not.

*Gomez Garcia v. Noem*, No. 5:25-cv-02771-ODW (PDx), 2025 WL 2986672, at *1 (C.D. Cal. Oct. 2025) (citations omitted).

This echoes the Supreme Court's illustration of the Government's implementation of its immigration policy as to who may enter this country and those who may remain. *See Jennings*, 583 U.S. at 286-87. In *Jennings*, a distinction is provided between noncitizens seeking entry to the United States at its borders and ports of entry and aliens already in the country subject to detention pending a decision on removal. *See id.* at 287-88. More specifically, Section 1225(b) "applies primarily to aliens seeking entry into the United States," while Section 1226(a) applies to "aliens already present in the United States." *Id.* at 297, 303.

9

For instance, Section 1225(b)(2) provides that "in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a [removal proceeding]." *See* 8 U.S.C. § 1225(b)(2)(A) (emphasis added). And "noncitizens subject to 1225(b)(2) are not eligible for expedited removal [under Section 1225(b)(1)] but are subject to mandatory detention while their full removal proceedings are pending." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025). As a result, Section 1225(b) requires detention without bond hearings during proceedings. *See Jennings*, 583 U.S. at 303; *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 111 (2020).

In contrast, Section 1226(a) "allows for discretionary release and review of detention through a bond hearing." *See Salcedo Aceros*, 2025 WL 2637503, at *3. Section 1226(a) states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . . [T]he Attorney General--
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on--
> (A) bond . . . or
> (B) conditional parole . . . .

8 U.S.C. § 1226(a). Indeed, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *See Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)). "If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his or her release." *Salcedo Aceros*, 2025 WL 2637503, at *1 (quoting *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006))).

10

Here, Petitioner alleges that he has been living in the United States since his re-entry in 2019 and was detained in San Bernardino—not at or near the border. Pet. at. 14. Thus, based on *Jennings*, Petitioner contends that he falls within the category of noncitizens contemplated by Section 1226(a)—not Section 1225(b). *Id*.

The Government contends that Section 1225(b)(2) governs Petitioner's detention. Opp'n at 15-19. First, the Government asserts that Petitioner must be detained under the "plain text" of Section 1225(b)(2). Opp'n at 15. For a noncitizen to be subject to mandatory detention under Section 1225(b)(2), a noncitizen must be (1) an applicant for admission, (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2). Of those three clauses, only an "applicant for admission" is defined within the category of subdivision (a) Inspection:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a); *see also Jennings*, 583 U.S. at 287 (stating that a noncitizen who is present in the United States but has not been admitted "is treated as an applicant for admission").

Courts across the country have rejected the Government's recent attempts to reclassify noncitizens residing in the United States as "applicants for admission" under Section 1225(b). *See Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sep. 30, 2025). Notably, district courts have rejected the Government's suggested position, although on a narrower basis—that noncitizen "applicants for admission" are not de facto "seeking admission." *See, e.g.*, *Mosqueda*, 2025 WL 2591530, at *5 (concluding that "seeking admission … does not apply to individuals who have been residing in the United States and did not apply for admission or a change of status").

In this regard, Petitioner may be deemed an "applicant for admission" as he is a noncitizen "present in the United States who has not been admitted." *See* 8 U.S.C. § 1225(a)(1); *see also Lepe v. Andrews*, No. 1:25-cv-01163-KES-SKO (HC), 2025 WL 2716910, at *5 (E.D. Cal. Sep. 23, 2025) ("[P]etitioner could be considered an 'applicant for admission' because he is allegedly an 'alien present in the United States who has not been admitted,' as defined at 8 U.S.C. § 1225(a)(1)[.]").

Nonetheless, the relevant inquiry is whether Petitioner is also "seeking admission" under Section 1225(b)(2). The Government does not conduct a textual analysis of "seeking admission," instead concluding that "applicant for admission" is synonymous with "seeking admission." Opp'n at 16-17. However, the Government's position ignores the statute's present-tense active language. As one court has observed:

> "Seeking" means "asking for" or "trying to acquire or gain." Merriam-Webster Dictionary, https://www.merriamwebster. com/dictionary/seeking. And the use of a present participle, "seeking," "necessarily implies some sort of present-tense action." *Martinez*, —— F. Supp. 3d at ——, 2025 WL 2084238, at *6. The term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). And "entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100-01 (9th Cir. 2010) (quoting *Matter of Pierre*, 14 I & N Dec. 467, 468 (1973)). To piece this together, the phrase "seeking admission" means that one must be actively "seeking" "lawful entry."

*Lepe*, 2025 WL 2716910, at *5; *Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC, 2025 WL 2822876, at *10 n.7 (N.D. Cal. Oct. 3, 2025) (discussing that the plain meaning of "seeking admission" is a "discrete temporal act, not an ongoing status that describes noncitizens residing in the interior"); *Salcedo Aceros*, 2025 WL 2637503, at *10; *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("'[S]eeking admission' implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

As relevant here, Petitioner is not actively seeking lawful entry. Rather, Petitioner entered the country more than two years ago and instead seeks to remain in the United States. The Court therefore concludes that Petitioner is not "seeking admission" as contemplated by Section 1225(b).

The Government next contends that *Florida v. United States*, 660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023), is instructive. Opp'n at 17. At issue in *Florida* were noncitizens arriving at the border who met "the statutory definition for applicants for admission and [were] subject to inspection under § 1225(a)." *See Florida v. United States*, 660 F. Supp. 3d 1239, 1273 (N.D. Fla. 2023). Absent from that decision is a determination that "applicants for admission" arrested while residing in the United States are subject to mandatory detention under Section 1225(b)(2). *See id.*

Indeed, *Florida* cuts against the Government's position in that the *Florida* court reiterates the distinction between those subject to mandatory detention under Section 1225 who arrive at or cross the border and noncitizens apprehended within the interior of the United States who are subject to Section 1226(a). *Id.* at 1275 ("As the Supreme Court stated in *Jennings*, § 1226 applies to 'certain aliens already in the country.'" (quoting *Jennings*, 583 U.S. at 289)); *see also Mosqueda*, 2025 WL 2591530, at *5 (distinguishing *Florida*). Here, unlike the noncitizens in *Florida* who were entering the United States and detained at the border, Petitioner alleges he has been living in the United States since 2019 and thus not detained near the border. Pet. at 14. The Court, therefore, declines to adopt the Government's interpretation of *Florida* to the issues at hand.

Lastly, the Government relies on the BIA's September 5, 2025 decision in the *Matter of Jonathan Javier Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) in support of the position that Petitioner is subject to mandatory detention under Section 1225(b) and therefore must be detained pending the outcome of his removal proceedings. Opp'n at 15-18. In *Yajure Hurtado*, the BIA affirmed the determination from the immigration judge ("IJ") that he lacked authority to hear the respondent's request for a bond because the respondent, who had been living in the United States for approximately two-and-a-half

years, was "an applicant for admission and is subject to mandatory detention under
section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A)." *See In re Jonathan Javier
Yajure Hurtado*, 29 I&N Dec. 216, at *229. Thus, according to the BIA, all "applicants
for admission" are also "seeking admission," and therefore subject to mandatory
detention under Section 1225(b). *See* U.S.C. § 1225(b)(2)(A) ("[I]in the case of an alien
who is an *applicant for admission*, if the examining immigration officer determines that
an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the
alien shall be detained for a proceeding under section 1229a of this title.") (emphasis
added).

However, the "vast majority of courts" across the country have rejected the BIA's
conclusion in *Yajure Hurtado* that noncitizens living in the United States are de facto
"seeking admission" under Section 1225(b). *See, e.g.*, *Ayala Amaya v. Bondi*, No. 25-cv-
16428-ESK, 2025 WL 3033880, at *2 (D.N.J. Oct. 30, 2025). For example, in *Bostock*,
the district court rejected the BIA's conclusions in determining that the BIA's ruling was
inconsistent with its earlier pronouncements. *See Bostock*, 2025 WL 2782499, at *26-27.
In particular, *Bostock* concluded that "the text of Section 1226, canons of interpretation,
legislative history, and longstanding agency practice" support that Section 1226(a)
governs noncitizens who have lived in the United States for years. *See id.*; *see also
Chavez v. Kaiser*, No. 25-06984-LB, 2025 WL 2909526, at *5 (N.D. Cal. Oct. 9, 2025)
("District courts have rejected similar reinterpretations [of applying Section 1225(b)(2) to
those living in the United States] post-*Yajure Hurtado*."); *Lepe*, 2025 WL 2716910, at *4
n.5 ("The Court is not bound by *Matter of Yajure Hurtado*'s interpretation of sections
1225 and 1226[.]" (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 413
(2024))).

While a recent decision in the Southern District of California has embraced *Yajure
Hurtado*, it is distinguishable as applied to the allegations in this matter. *See Chavez v.
Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sep. 24, 2025). In
*Chavez*, the district court denied a temporary restraining order on the grounds that the

petitioners had not demonstrated "serious questions about the application of Section 1225 to aliens present in the United States." *Id.* at \*4. The *Chavez* court's analysis of Section 1225(b), however, was limited to determining whether the petitioners, as non-citizens present in the United States but not admitted, were "applicants for admission" under Section 1225(b). *Id.* Here, however, Petitioner contests whether he is an applicant for admission "*seeking admission*" under Section 1225(b)(2) and, by extension, whether he is subject to mandatory detention under that provision. App. at 7-9. Other courts in this Circuit have also recognized this distinction. *See Cordero Pelico*, 2025 WL 282287, at \*14 (distinguishing *Chavez* and concluding that Section 1225(b)(2) "provides no legal basis for the Government's detention of petitioners" who were previously released in accordance with Section 1226(a)).

The Government further asserts that Petitioner is subject to 1225(b)(2)'s mandatory detention provision in the same vein as noncitizens detained at the border. Opp'n at 18. In support, the Government argues that Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") so that noncitizens living in the United States are not "in a better position" than those crossing the border. Opp'n at 18. Although the Government points to Congress's concern with the "entry doctrine anomaly," the IIRIRA resolved this problem by placing noncitizens "on equal footing in *removal* proceedings under the INA." *See Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (citation modified) (emphasis added). Creating a level playing field in removal proceedings, however, "says nothing about detention pending the outcome of those proceedings." *See Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827, at \*12 (D. Mass. Aug. 19, 2025); *see also* 8 C.F.R. § 1003.19(d) (noting that an IJ's consideration of requests for "custody or bond . . . shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding"). As the *Bostock* court reasoned:

> Nor can Defendants enlarge Congress's stated concern that noncitizens living in the United States had an advantage during *removal* proceedings pre-IIRIRA to an unarticulated aim to

mandate *detention* for all such noncitizens post-IIRIRA. It is easy
to conceive of reasons Congress would distinguish between these
concepts; for one, noncitizens who have lived for years in this
country are more likely to be working in critical industries,
parenting U.S. citizen children, or otherwise serving their
communities. . . . The mass detention of these individuals—
without regard to flight risk or danger to the public—is far more
disruptive to local American economies, families, and
communities than the detention of noncitizens who have just
crossed the border. And as discussed above, to the extent
legislative history is a guide, Congress declared its intention that
noncitizens taken into custody while residing in the United States
retain the ability to secure release on bond. *See* § 1252(a)(1)
(1994); H.R. Rep. No. 104-469, pt. 1, at 229.

*Bostock*, 2025 WL 2782499, at *24. Furthermore, the Government's reliance on the
IIRIRA to group all noncitizens in one detention category is misplaced as the Supreme
Court in *Jennings* held that Section 1225(b) "applies primarily to aliens seeking entry
into the United States," whereas Section 1226(a) applies to "certain aliens already in the
country[.]" *See Jennings*, 583 U.S. at 281, 297. Thus, neither the IIRIRA nor the
Supreme Court's precedent in *Jennings* support the Government's position that all
noncitizens in the United States are subject to mandatory detention under Section
1225(b)(2).

        In addition, the Court notes that nearly identical challenges to unlawful detention
under Section 1225(b) across the country have been found to have a "likelihood of
success on the merits" or have resulted in the writ for habeas petition being issued. *See,
e.g.*, *Mosqueda*, 2025 WL 2591530, at *5 ("[T]he Court concludes that petitioners are
likely to succeed on the merits of their claims because section 1226(a), not section
1225(b)(2), likely governs their detention."); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-
01789-ODW (DFMx), 2025 WL 2379285, at *2 (C.D. Cal. Aug. 15, 2025) (granting
individualized bond hearings on *ex parte* motion for temporary restraining order after
finding likelihood of success); *Bostock*, 2025 WL 2782499, at *1 ("Every district court to
address this question has concluded that the government's position belies the statutory

16

text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice."); *Luna Quispe v. Crawford*, No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, at *6 (E.D. Va. Sep. 29, 2025) ("Petitioner's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures, as at least thirty federal district courts around the country, including two in this Circuit, have concluded when faced with habeas petitions from comparably situated petitioners.").

Accordingly, Petitioner is likely to succeed on the merits of his unlawful detention claim as Petitioner's allegations support that Section 1226(a), not section 1225(b)(2), likely governs his detention. Thus, this factor weighs in favor of granting Petitioner's requested relief. Because this conclusion is sufficient to grant the relief sought, the Court declines to address the other claims at this juncture. *See Mosqueda*, 2025 WL 2591530, at *5 (declining to separately address petitioners' due process and APA claims after determining that petitioners were likely to succeed on their claims as Section 1226(a), not Section 1225(b)(2), governed their detention); *see also Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630, at *5 n.1 (N.D. Cal. Oct. 15, 2025) ("Because the relief granted herein obviates any immediate need for the Court to address this substantive due-process issue, the Court declines to do so at this time.").

## B.    Whether Petitioner is Likely to be Irreparably Harmed

Petitioner contends he will suffer irreparable harm if the Court does not issue a TRO in that he will remain in unlawful custody—detained under a statute that does not apply and without a bond hearing—and that each "additional day of confinement inflicts irreparable harm." App. at 6.

It is well established that the deprivation of constitutional rights "unquestionably constitutes irreparable injury." *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). Included in such deprivation is "physical liberty by detention," which the Ninth Circuit has held amounts to irreparable harm. *See Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018). Here, the harm in a continued detention absent due process is the deprivation of the right

17

to a bond hearing. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Mosqueda*, 2025 WL 2591530, at *6 (concluding petitioners would be irreparably harmed by continued detention without bond hearings they were entitled to under Section 1226(a)); *see also Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017) (determining plaintiffs established irreparable harm was likely to result as they were likely to be "unconstitutionally detained for an indeterminate period of time"); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013) (stating irreparable harm was likely to result from the government's reading of detention statutes that subjected noncitizens to continued detention without being provided a bond hearing).

Petitioner asserts that he has spent more than four months in detention as of the time of the filing of the Petition without an opportunity for bond. *See* Pet. at 5. The Court, therefore, concludes that the potential for Petitioner's continued detention without a bond hearing would amount to irreparable injury as violative of that contemplated by Section 1226(a). Petitioner has demonstrated that his continued detention without a bond hearing is likely to result in irreparable harm. Thus, this factor weighs in favor of granting Petitioner's requested relief.

### C.    Whether the Balance of the Equities and Public Interest Favor Petitioner

When the government is the opposing party, the last two *Winter* factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Petitioner contends that the balance of equities tilt in his favor because his liberty interest is profound, the Government cannot suffer harm from an injunction that prevents it from engaging in an unlawful practice, and requiring the Government to provide Petitioner a bond hearing would impose a negligible administrative burden. App. at 15-16. The Government responds that it has a compelling interest in the enforcement of its immigration laws and that judicial intervention would disrupt the status quo and the Court should avoid injecting uncertainty in the process. Opp'n at 19-20.

To determine the balance of equities, the court must "balance the interests of all parties and weigh the damage to each." *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (citation omitted). In general, "public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

Here, Petitioner challenges the Government's application of statutes that likely violate federal law. Pet. at 9-10, 14-16. The Court, therefore, concludes that the balance of equities and public interest factors tip in favor of Petitioner. S*ee Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citations omitted)); *Robbins*, 715 F.3d at 1145 (discussing that the government "cannot suffer harm from an injunction that merely ends an unlawful practice"). Nor is the Court persuaded that judicial intervention would disrupt the status quo or inject uncertainty in the enforcement of immigration laws. Accordingly, the last two *Winter* factors favor granting the requested relief.

### D.    Whether Petitioner Should be Immediately Released

Petitioner seeks to be immediately released from detention or, at a minimum, receive an individualized bond hearing within seven days. App at 12. The Government asserts that if the Court grants the Application, the Court should only order Petitioner released if a Section 1226(a) bond hearing is not provided within seven days. Opp'n at 20. Although Petitioner cites cases that have ordered the immediate release of noncitizens wrongly detained, the petitioners in those cases had either been detained under statutes not at issue here or had been previously released from detention. *See, e.g.*, *Hernandez v. Wofford*, No. 1:25-cv-00986-KES-CDB, 2025 WL 2420390, at *1, 8 (E.D. Cal. Aug. 21, 2025) (ordering petitioner, who had previously been released and re-detained at his asylum hearing, immediately released after being in a detention facility for three weeks); *Vazquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *1 (D. Nev. Sep.

17, 2025) (stating that court had previously ordered petitioner be released on the unconstitutionality of the automatic stay provision in C.F.R. § 1003.19(i)(2)).

Accordingly, the Court declines at this time to order Petitioner's immediate release from detention. *See Mosqueda*, 2025 WL 2591530, at *7 (declining to order petitioners' immediate release, but enjoining the government from continuing to detain petitioners if they were not granted an individualized bond hearing within seven days).

## V. Conclusion

The Court, having reviewed Petitioner's *Ex Parte* Application for a Temporary Restraining Order, Dkt. 3, Respondents' Opposition, Dkt. 6, and Petitioner's Reply, Dkt. 9, and for the foregoing reasons, hereby **GRANTS IN PART** Petitioner's Application. Accordingly, the Court hereby **ORDERS** as follows:

1. Respondents **SHALL** provide Petitioner with a bond hearing pursuant to 8 U.S.C. Section 1226(a) no later than November 17, 2025;

2. Respondents are **ENJOINED** from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. Section 1225(b)(2);

3. If the individualized bond hearing is not conducted on or before November 17, 2025 Petitioner **SHALL** be released until it is determined that his detention is warranted under 8 U.S.C. Section 1226(a);

2. Respondents are **ENJOINED** from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case; and

3. Respondents **SHALL** show cause in writing on or before November 17, 2025 as to why the Court should not issue a preliminary injunction in this case. Petitioner may file a response on or before November 19, 2025 after Respondents' filing. Respondents may file a Reply on or before November 21, 2025;

4. The Parties **SHALL** file a status report on the status of Petitioner's bond hearing on or before November 21, 2025. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

1
2          The Court shall set a hearing on whether a preliminary injunction should issue by
3    separate order.
4
5          **IT IS SO ORDERED.**
6
7     Dated: November 10, 2025
8                                                    HON. SERENA R. MURILLO
9                                                    UNITED STATES DISTRICT JUDGE
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28